UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
WILLIAM WHITEHURST,

                Plaintiff,

      v.

HARRISON AND STAR, LLC,

                Defendant.

---------------------------------------------------------------- X

Civil Action No.

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff William Whitehurst ("Plaintiff" or "Mr. Whitehurst"), by and through his undersigned counsel, Wigdor LLP, as and for his Complaint in this action against Defendant Harrison and Star, LLC ("Defendant" or the "Company"), hereby alleges as follows.

## PRELIMINARY STATEMENT

1.    William Whitehurst has a set of photography and imaging skills that earned him a reputation as a "Swiss Army Knife" with his managers at the Company. For his approximately nine years at the Company, he was very busy and productive, handling many types of work that brought significant revenue into the Company, and was so central to the Imaging department that one of his managers believed that it would be "crazy" to consider letting him go.

2.    Yet, in March 2018, the Company terminated Mr. Whitehurst as part of a reorganization in which employees who were 50 years of age and older were over 10 times more likely to be fired than their younger coworkers. Mr. Whitehurst was terminated amid a Company culture that placed a premium on projecting a "young, vibrant" image and did not value retention of its older employees. Indeed, Mr. Whitehurst learned after his termination that other, younger employees were given the choice of staying with the Company at reduced pay, whereas he was not given any such option, and that the Company had so much imaging work that it could, in

fact, have used another employee in the area, and had hired freelancers at significant cost to cover the available work.

3.      Therefore, Plaintiff brings claims against Defendant pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101, *et seq.* ("NYCHRL").

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this action pursuant 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADEA.  The Court has subject matter jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because Harrison and Star LLC is a corporation doing business in the State of New York and is subject to personal jurisdiction in this district, and a substantial portion of the unlawful conduct alleged herein occurred in this district.

## ADMINISTRATIVE REQUIREMENTS

6.      On May 2, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

7.      On June 29, 2018, Plaintiff received a Notice of Right to Sue from the EEOC. Fewer than 90 days have passed since Plaintiff received his Notice of Right to Sue.

8.      A copy of the Complaint will be served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

9.      Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

10.     Plaintiff William Whitehurst is a former employee of the Company and resident of the State of New York, Rockland County. At all relevant times, Mr. Whitehurst met the definition of an "employee" under all applicable statutes.

11.     Defendant Harrison and Star, LLC is a limited liability corporation with its principal place of business located at 75 Varick Street, 6th Floor, New York, New York 10013. At all relevant times, the Company met the definition of an "employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

### I.    BACKGROUND

12.     Mr. Whitehurst is a highly skilled and dedicated professional photographer, digital imaging specialist and former nine-year employee of Harrison and Star, LLC, an agency within Omnicom Health Group and part of Omnicom Group Inc.

13.     Before he joined Harrison and Star, Mr. Whitehurst had been a successful professional photographer and imaging specialist for over 25 years.

14.     From the 1980s through 2009, Mr. Whitehurst maintained a commercial photography studio in New York City where he created advertising, studio and still life photography, as well as computer graphics.

15.     Some of his past clients include American Express, Arthur Anderson, Avanti, Bantam Doubleday Dell, Barnes & Noble, Bloomingdale's, Cannon, Ford, Fortune Magazine (two Fortune 500 covers), Maxell (billboards in Times Square and worldwide), The New York Times, and many others.

16.     Mr. Whitehurst joined Harrison and Star in 2009 as a photographer, and quickly became one of its top imaging specialists. He was hired from a large pool of potential candidates because of his additional skills in retouching, 3D illustration and animation.

17.     Due to his considerable experience, skill and talent, Mr. Whitehurst was consistently chosen for the Company's most difficult assignments.

18.     Mr. Whitehurst was able to work on any concept or hi-resolution advertisement, and was an expert photo retoucher and 3D illustrator. Mr. Whitehurst kept up with the latest digital equipment and software, and was at the forefront of new technology, contributing to Virtual Reality projects and running the 3D printer.

19.     Mr. Whitehurst always received high praise for his work and was consistently rated as "performance exceeds expectations" in his annual reviews.

20.     Mr. Whitehurst's varied skill set meant that his expertise was in constant demand, and, unlike other Company employees, he had little to no downtime at work.

21.     Mr. Whitehurst was called a "Swiss Army Knife" at the Company, referring to the quality and breadth of his skill set and work assignments.

22.     Harrison and Star calculated invoices for its clients at a rate of $350 per hour for Mr. Whitehurst's photography and $250 per hour for his photo retouching, far above the hourly rates it charged for the work of many top executives. In this sense, Mr. Whitehurst was a consistent revenue generator for the Company.

23.     In addition to his talent and skills, Mr. Whitehurst also demonstrated complete loyalty to the Company and was the consummate team player. Examples of this included his willingness to work unpaid overtime, as well as his willingness to forgo the use of paid time off

("PTO") and compensatory time off ("Comp days") in order to assist with Company staffing issues.

24. For instance, despite having 8.5 PTO days and 9.5 Comp days (all accrued and unused) in November 2017, Company managers Mladen Kurtovic and David Brungard told Mr. Whitehurst that he could not take time off because the Imaging Department was short-staffed, several employees were out on leave and there was a bad flu season.

25. Rather than press the issue, Mr. Whitehurst agreed to use his accrued time off the following year (as permitted by Company policy), and he continued to passionately dedicate himself to his work and the continued success of the Company.

26. When Mr. Whitehurst was laid off just a few months later, the Company denied him any compensation for all of his accrued, unused PTO and Comp days, adding insult to injury.

II. **THE COMPANY DISCRIMINATED AGAINST AND TERMINATED MR. WHITEHURST BASED UPON HIS AGE**

27. Despite Mr. Whitehurst's value, contributions and hard work, the Company's openly stated desire to promote a "young and vibrant image" ultimately prevailed and resulted in the unlawful termination of Mr. Whitehurst, along with a group of many of the Company's eldest employees.

28. On March 1, 2018, Mr. Whitehurst was told that he was being let go as part of a group termination and that the Company supposedly no longer had a need for a photographer because it would be using the production team from Link 9 (another Omnicom company and sister agency to Harrison and Star).

29. However, the circumstances surrounding the Company's termination of Mr. Whitehurst's employment – particularly given his consistently outstanding performance and the

5

near-constant demand for his skill set – indicate that age was the decisive factor in his termination.

30. Indeed, when reviewing which employees to keep after the upcoming merger, David Brungard said that he told upper management, "You'd be crazy to let William Whitehurst go – he's a digital imaging Swiss Army Knife who can do any type of job we give him."

31. In fact, the Company's own data conclusively shows that the group termination overwhelmingly disproportionately impacted older employees, particularly those over 50 years of age.

32. The Older Workers Benefits Protection Act Exhibit ("OWBPA Exhibit"), which was attached to Mr. Whitehurst's termination paperwork (including a severance agreement and release), lists the ages of the employees who were considered by the Company for termination and those selected for termination along with Mr. Whitehurst.

33. The OWBPA Exhibit indicates that, at 61 years old, Mr. Whitehurst was the oldest of the 10 employees terminated as part of the group termination.

34. In addition, the OWBPA Exhibit confirms a larger pattern of age discrimination, with the average age of the 10 employees who were terminated being 51.5 years, whereas the average age of the employees who were retained was 38.3 years of age.

35. The undisputed fact that seven of the Company's 61 employees who were over the age of 50 (11.5%) at the time they were fired, whereas only three of the Company's 285 employees under the age of 50 (1.1%) were let go as part of the supposedly legitimate group termination results in a statistical disparity in the selection rates for those two groups that is virtually legally and factually dispositive.

36. These wildly imbalanced termination rates yield a stratospheric standard deviation result of 4.41, indicating a close, deliberate and non-coincidental tie between age and employees' chances of being selected for termination by the Company.

37. A standard deviation of 4.41 points squarely at an indisputable role for the factor of age in the selections made as part of this group termination.

38. Additional evidence also demonstrates the Company's discriminatory attitude towards older employees and its desire to promote a young, hip image that older employees were not viewed as falling within.

39. By way of example only, Mr. Whitehurst created promotional materials displaying images of the Company's creative team, and after he presented these materials, Mark Friedman, Executive Vice President and Chief Creative Officer, told him to remove an older employee from the image and to feature only younger employees, as well as the Company's few ethnic employees, in order to project a "young, vibrant vibe."  Although most ad agencies would feature their top creative designers in such an image, it is notable that the Company only wanted to display its younger staff members.

40. Further, soon after his termination, a senior executive at Link 9 informed Mr. Whtiehurst that, contrary to the Company's stated position that his role as photographer was no longer needed, Harrison and Star and Link 9 had more than enough work to justify employing an additional photographer or imaging specialist.

41. In fact, the Imaging Department became under-staffed and freelance workers were hired on a frequent, if not near-daily, basis in order to make up for the loss of personnel in the wake of the merger.

42. Harrison and Star also offered several employees the possibility to continue at reduced pay, yet the Company did not extend such an offer to Mr. Whitehurst. For example, two younger employees in the Video Department were allowed to continue with reduced pay, even though their positions were redundant.

43. This directly contradicts the Company's obviously pretextual justification for Mr. Whitehurst's termination.

44. The senior executive at Link 9 also informed Mr. Whitehurst that it was the unstated policy of Omnicom (which includes Harrison and Star) to give annual raises primarily to young employees, and not to the older employees, because Omnicom is only concerned with retaining its younger workers.

45. Additionally, this senior executive told Mr. Whitehurst that Omnicom terminated senior staff and hired younger employees at lower salaries as a part of the several mergers he experienced during his time at Omnicom.

46. Sadly, the Company's unlawful discrimination has left Mr. Whitehurst, a highly regarded and dedicated employee with no intention of slowing down and who planned to stay in his position for another 10 years, in the very difficult and frightening position of heading back into the job market at 61 years of age.

## FIRST CAUSE OF ACTION
**(Discrimination in Violation of the ADEA)**

47. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs, as though set forth fully herein.

48. Defendant has discriminated against Plaintiff on the basis of his age in violation of the ADEA by, *inter alia*, terminating Plaintiff's employment because of his age.

49. As a direct and proximate result of the Corporate Defendant's unlawful discriminatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

50. The Defendant's unlawful discriminatory conduct constitutes a willful and wanton violation of the ADEA, was outrageous and malicious, was intended to injure Plaintiff and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of liquidated damages.

## SECOND CAUSE OF ACTION
**(Age Discrimination in Violation of NYSHRL)**

51. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs, as though set forth fully herein.

52. Defendant has discriminated against Plaintiff on the basis of his age in violation of the NYSHRL by, *inter alia*, terminating Plaintiff's employment because of his age.

53. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

54. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, demoralization, embarrassment, and emotional pain and suffering.

## THIRD CAUSE OF ACTION
### (Age Discrimination in Violation of NYCHRL)

55. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs, as though set forth fully herein.

56. Defendant has discriminated against Plaintiff on the basis of his age in violation of the NYCHRL by, *inter alia*, terminating Plaintiff's employment because of his age.

57. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

58. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, demoralization, embarrassment, and emotional pain and suffering.

59. Defendant's unlawful discriminatory conduct, including retaliation, constitutes a willful and wanton violation of the NYCHRL, was outrageous and malicious, was intended to injure Plaintiff and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States, the State of New York and the City and State of New York;

B. An injunction and order permanently restraining Defendant and its members, partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An order directing Defendant to reinstate Plaintiff in the position he would have occupied but for Defendant's unlawful conduct;

D. An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, damage to his personal and/or professional reputation, emotional pain and suffering and emotional distress;

F. An award of punitive damages in an amount to be determined at trial;

G. An award of liquidated damages;

H. Prejudgment interest on all amounts due;

I. An award of costs incurred by Plaintiff in prosecuting this action, as well Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J. Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
September 21, 2018

Respectfully submitted,

**WIGDOR LLP**

By: _____
Lawrence M. Pearson
Taylor J. Crabill

85 Fifth Avenue
New York, New York 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
lpearson@wigdorlaw.com
tcrabill@wigdorlaw.com

*Counsel for Plaintiff*